**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 26 CR 106 |
| v. | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| TIMOTHY HOLMES | ) | |

## MEMORANDUM OPINION & ORDER

Defendant Timothy Holmes filed a Motion to Dismiss the Criminal Complaint. (Dkt. 36). The Government opposes the Motion. (Dkt. 39). For the reasons below, the Court denies Holmes' Motion. (Dkt. 36).

## BACKGROUND

After the Government filed a Criminal Complaint against Holmes on March 13, 2026 (Dkt. 1), a grand jury returned an Indictment charging Holmes with violating 18 U.S.C. § 875(c) on April 7, 2026. (Dkt. 10). The Indictment alleges that Holmes operated the X account "@MapleStCapital" that displayed an American flag emoji with the statement "END The Fed." (*Id.*, ¶ 1.a); (*see also* Dkt. 1 at 2-5).[1] The Indictment alleges that Holmes posted on that account several statements against the Jewish community and Israel, including: "The jew will be destroyed and discarded," "From the river to the sea every Jew will die," "You inbred people will all die," and "Die Jew." (Dkt. 10, ¶ 1.b); (*see also* Dkt. 1 at 6-7). On or about March 3, the State of Israel posted a video that showed a billboard with the face of Ali Khamenei along with the statement: "The world is a better place without Khamenei." (Dkt. 10, ¶ 2); (Dkt. 1 at 3-4). In that post, the

[1] The Court's references to the Complaint are purely for background purposes.

State of Israel wrote: "It's a first step towards a better world." (Dkt. 10, ¶ 2); (Dkt. 1 at 3-4). Holmes responded to this post from the State of Israel with the following message: "I'm going to shoot up a synagogue." (Dkt. 10, ¶ 2). It is that statement that the Government alleges violated 18 U.S.C. § 875(c). (*Id.*)

## LEGAL STANDARD

"When considering a motion to dismiss an indictment the Court assumes all of the facts alleged in the indictment as true and views all of the facts alleged in the indictment in the light most favorable to the government." *United States v. Linder*, 2013 WL 812382, at *30 (N.D. Ill. Mar. 5, 2013) (citing *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)). "Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment 'be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Id.* (quoting Fed. R. Crim. P. 7(c)(1)). "'The true test of the sufficiency of the indictment is whether it contains the elements of the offense intended to be charged.'" *Id.* (quoting *United States v. Senak*, 477 F.2d 304, 306 (7th Cir. 1973)). Thus, "[a]n indictment is deemed sufficient if it: (1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002); *Hamling v. United States*, 418 U.S. 87, 117 (1974).

"Additionally, when determining the sufficiency of an indictment," the Court looks "at the contents of the subject indictment 'on a practical basis and in its entirety, rather than in a hypertechnical manner.'" *McLeczynsky*, 296 F.3d at 636 (brackets omitted) (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). The Federal Rules of Criminal Procedure "'were designed to eliminate technicalities in criminal pleadings and are to be construed to secure

simplicity in procedure,'" so "[w]hile detailed allegations might well have been required under common-law pleading rules," "they surely are not contemplated by Rule 7(c)(1)[.]" *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (quoting *United States v. Debrow*, 346 U.S. 374, 376, (1953)).

**DISCUSSION**

First, the Defense moves to dismiss the Complaint in this matter and not the Indictment. The Complaint contains more details and a narrative regarding how the Defendant was identified; but the Indictment charges solely one count of violating 18 U.S.C. § 875(c). Although neither side addresses the difference in their initial briefing, the difference is significant. Dismissing the Complaint would entail challenging the probable cause determined by the Magistrate Judge, but after the case is indicted, probable cause exists based on the grand jury's return of that charge. The Complaint is no longer the operative charging document. The Indictment supersedes that document based on the grand jury's finding of probable cause. *United States v. Lauchli*, 444 F.2d 1037, 1042 (7th Cir. 1971). "An indictment obviates any need for a criminal complaint, which sets forth potential charges but is not itself a charging document." *United States v. Gerebizza*, 720 F. App'x 302, 305-06 (7th Cir. 2017); *see* Fed. R. Crim. P. 3, 7.

Holmes recognizes these facts in his reply brief where he concedes (at least implicitly) that many of the arguments he raised in his Motion are not relevant to a motion to dismiss an indictment. (Dkt. 44).[2]

The Government charged Holmes with violating § 875(c). This section states that:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

[2] Holmes refiled what appears to be an identical reply brief (*see* Dkt. 45) yet titles his reply as a "Motion" which the Court understands to be a typographical error. (*See* Dkt. 44).

18 U.S.C. § 875(c). "More specifically, § 875(c) punishes threats that are made at least recklessly." *United States v. Sheikh*, 164 F.4th 629, 634 (7th Cir. 2026). The statute carries the true threat and *mens rea* requirements "implicitly." *Id.* at 633. "True threats are 'serious expressions' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (brackets omitted) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). "Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat," however. *Id.*; *Elonis v. United States*, 575 U.S. 723, 733 (2015). The "existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end," and so when "the statement is understood as a true threat, all the harms that have long made threats unprotected naturally follow." *Counterman*, 600 U.S. at 74 (quotes omitted). "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Id.* (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969)). "'True threats' of violence" fall into an "unprotected category of communications" outside the protections of the First Amendment. *Id.* (quoting *Black*, 538 U.S. at 359 (2003)). The test is weighed on a "recklessness standard." *Id.*; *Sheikh*, 164 F.4th at 634.

The Indictment alleges that:

> TIMOTHY HOLMES, defendant herein, knowingly transmitted in interstate commerce a communication containing a threat to injure the person of another, namely, a post on X in which he wrote, in response to a post from "@Israel", "I'm going to shoot up a synagogue", and defendant transmitted the communication for the purpose of making a threat, knowing that the communication would be viewed as a threat, and recklessly disregarding a substantial risk that others would regard the communication as a threat

(Dkt. 10, ¶ 2). The Indictment passes muster. *Resendiz-Ponce*, 549 U.S. at 109-10. First, it sufficiently states the elements of the charged offense. (Dkt. 10); 18 U.S.C. § 875(c); *McLeczynsky*,

296 F.3d at 636. While many of Holmes' arguments attack the concision and detail of the Indictment (*see generally* Dkts. 36, 44), the Indictment comports with Rule 7(c)(1) which requires "a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). No more is necessary. *Resendiz-Ponce*, 549 U.S. at 109-10. Nor can Holmes contend that the Indictment does not "fairly" inform him "of the nature of the charge so that he may prepare a defense." *McLeczynsky*, 296 F.3d at 636. It is clear: the grand jury charged Holmes under 18 U.S.C. § 875(c) for posting "I'm going to shoot up a synagogue" on X.com in response to a post from "@Israel." (Dkt. 10).[3] Nor does the Indictment fail on the third requirement, "enabl[ing] [Holmes] to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *McLeczynsky*, 296 F.3d at 636. Holmes does not even contend that it does. (*See* Dkt. 36).

Read literally, swaths—if not the entirety—of Holmes' Motion is flawed as he is not challenging the operative charging document—the Indictment—but rather the Complaint. (*See* Dkts. 1, 10, 36). To the extent applicable and relevant, the Court will nevertheless interpret Holmes' Motion—and references to the Complaint—as directed toward the Indictment. Furthermore, many of Holmes' positions are muddled and duplicative. The Court need not untangle them but will address each of Holmes' four primary positions sequentially.

## I.

Holmes contends that the Court must dismiss the Indictment because it fails to prove *mens rea*. (Dkt. 36 at 4). In Holmes' view, the Court must dismiss the Indictment because it "contains no allegation that Mr. Holmes subjectively intended his statements to be threatening or that he was aware that others could regard them as threatening violence." (*Id.*) "Whether [Holmes] is aware

[3] The Court understands that "@Israel" is the (or one of the) official X.com account(s) for the State of Israel.

of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat." *Counterman*, 600 U.S. at 74. "The existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Id.* Furthermore, the proper *mens rea* "standard, again, is recklessness." *Id.* at 82. "A person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk that the conduct will cause harm to another.'" *Id.* at 79 (brackets omitted) (quoting *Voisine v. United States*, 579 U.S. 686, 691 (2016)). The Indictment need only sufficiently allege that Holmes was "aware 'that others could regard his statements as' threatening violence" and, despite this awareness, "'deliver[ed] them anyway.'" *Id.* (quoting *Elonis*, 575 U.S. at 746); *Hamling*, 418 U.S. at 117. The Court must ask whether the Indictment sufficiently alleges that Holmes "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman*, 600 U.S. at 69; *Resendiz-Ponce*, 549 U.S. at 109-10. It does.

The Government alleges that Holmes "transmitted the communication ***for the purpose*** of making a threat, ***knowing*** that the communication would be viewed as a threat, and ***recklessly disregarding*** a substantial risk that others would regard the communication as a threat." (Dkt. 10, ¶ 2) (emphasis added). On a motion to dismiss an indictment, the Court must accept those well-pleaded allegations as true. *Linder*, 2013 WL 812382, at *30; *Yashar*, 166 F.3d at 880. Another problem with Holmes' argument—and a reoccurring issue infecting most of Holmes' Motion—is that it he conflates what the Government must *prove* at trial with what it must *plead* in an indictment. *Compare Linder*, 2013 WL 812382, at *30 *with* (Dkt. 36 at 4) *with United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). Indeed, "[c]hallenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *Moore*, 563 F.3d at 586 (quotes omitted); *United States v. Yasak*, 884 F.2d 996, 1001

(7th Cir. 1989) ("A motion to dismiss is not intended to be a summary trial of the evidence. . . . Such a motion is directed only to the validity of the indictment or the information, and it tests only whether an offense has been sufficiently charged.") (quotes omitted).

Holmes claims that the Indictment additionally fails to satisfy the *mens rea* requirement because "the factual circumstances alleged affirmatively negate the inference that Mr. Holmes possessed the subjective intent to threaten" and the "government's own allegations establish that Mr. Holmes' travel to Florida was for the benign, lawful purpose of visiting his sick mother." (Dkt. 36 at 4-5). This is irrelevant. It attacks the Government's evidence, which is improper at this stage. *Supra* at 2-6. Again, "recklessness is now the standard." *Sheikh*, 164 F.4th at 634; *Counterman*, 600 U.S. at 79. The Government sufficiently alleged Holmes' *mens rea.* (Dkt. 10, ¶ 2); *supra* at 2-6. Whatever relevance Holmes' trip to Florida possesses at trial remains to be seen; what relevance it poses here is clear: none. *Moore*, 563 F.3d at 586; *Yasak*, 884 F.2d at 1001; *Linder*, 2013 WL 812382, at *30.

Holmes asserts that his statement "I'm going to shoot up a synagogue" is not a true threat because it lacks sufficient specificity. (Dkt. 36 at 5). Holmes maintains that his post was but a "generalized, albeit offensive, statement directed at an institution or building" that fails to rise to the level of a true threat because "[i]t does not identify a particular individual or group of individuals" and it also does not "specify a location, a time, or any target beyond the generic category of 'a synagogue.'" (*Id.*) This position is not "an argument about the validity of the indictment in light of the First Amendment, but is instead a dispute over the meaning and inferences that can be drawn from the facts." *United States v. White*, 610 F.3d 956, 962 (7th Cir. 2010). This Court has rejected these types of arguments for over a decade because these issues are improper to decide on a motion to dismiss. *United States v. Haddad*, 2014 WL 1493152, at *1

(N.D. Ill. Apr. 16, 2014) (declining to dismiss an indictment and explaining that "[w]hether these letters contain true threats or merely caustic political discussion is a question of fact for the jury to resolve"). Because Holmes' arguments go to the substantive merits of the Government's case—and not to whether the Indictment is sufficient—the Court rejects them. *Id.*; *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008) (the determination of whether "statements were threats" is a "question . . . for the jury"); *White*, 610 F.3d at 962 ("The question of White's intent and the inferences that can be drawn from the facts are for a jury to decide.").

Holmes' contention that his post is protected political hyperbole fails for the same reasons. (Dkt. 36 at 5-6); *supra* at 7. Invoking *Watts v. United States*, 394 U.S. 705, 708 (1969), Holmes claims that his posts "were responsive to foreign policy events and government statements." (Dkt. 36 at 6). The Court understands Holmes' position to be that the First Amendment protects his post as political speech, and thus the Court must dismiss the Indictment because the post does not violate 18 U.S.C. § 875(c). (*Id.*) For starters, this position, like many others Holmes raises, tangles and conflates multiple procedural and substantive issues into one incomprehensible ball. To the extent Holmes' position is that, as facially alleged, the Indictment, even if accepted as true, cannot, as a matter of law, satisfy § 875(c), this argument fails. The Court cannot accept such a premise. This is not a scenario where the Court could comfortably accept the Government's allegations as true and find that it failed to satisfy Rule 7(c)(1). Holmes is not alleged to have posted some mundane political position such as "Taxes are too high!" Nor did he post an offensive, but generally understandably non-threatening statement such as, "Slow drivers should go to hell!" He posted: "I'm going to shoot up a synagogue" in response to a post from the State of Israel after posting statements such as: "Die Jew," "You inbred people will all die," "The jew will be destroyed and discarded," and "From the river to the sea every Jew will die." (Dkt. 10). Holmes is free to explain

to a jury that his post was mere political commentary; but at this stage of the proceedings, the Court finds that the Government has sufficiently alleged that this statement is a "serious expression[] conveying that a speaker means to commit an act of unlawful violence." *Counterman*, 600 U.S. at 74 (quotes omitted); *Sheikh*, 164 F.4th 633-34; *Parr*, 545 F.3d at 497; *White*, 610 F.3d at 962; Fed. R. Crim. P. 7(c)(1).

**II.**

Holmes changes direction by raising three arguments that challenge the Government's position from a statutory standpoint. (Dkt. 36 at 6-8). He first claims that the Indictment must fail because his post "I'm going to shoot up a synagogue" does not satisfy 18 U.S.C. § 875(c) because it "refers to a building or institution, not to 'the person of another,'" "does not identify any individual or individuals," and "does not threaten bodily harm to any specific person." (Dkt. 36 at 7). In substance, these arguments challenge whether Holmes' statement is a true threat and are again rejected for the reasons above. *Supra* at 7-8. Holmes' next position—that the Government failed to allege sufficient *mens rea*—is duplicative and rejected for the reasons above. *Supra* at 2-6. Holmes' position concerning the Government's apparent "corroborating evidence" is irrelevant. (Dkt. 36 at 7-8). Whatever evidence Holmes is referring to regarding his travels to Florida, and how (or if) that evidence supports the Government's position, is not relevant on a motion to dismiss an indictment. *See supra* at 2-8; *Moore*, 563 F.3d at 586; *Yasak*, 884 F.2d at 1001.

**III.**

Holmes raises a third standalone argument about his posts regarding the "address of relatives of Israeli Official A." (Dkt. 36 at 8-9). These issues are not properly before the Court nor are they relevant on a motion to dismiss. *Moore*, 563 F.3d at 586; *Yasak*, 884 F.2d at 1001. These arguments attack certain allegations in the Complaint (Dkt. 1), but they do not appear in the

Indictment. (Dkt. 10). Furthermore, Holmes is not charged with any crime for making these statements. (*See id.*). To the extent the Government intends to rely on them as evidence, Holmes can address their relevance (if any) at the proper time: trial. *See Moore*, 563 F.3d at 586.

**IV.**

In his fourth and final argument, Holmes presents two constitutional challenges. (Dkt. 36 at 9-10). Holmes begins by claiming that the Government's prosecution of him is an impermissible content-based restriction on political speech. (*Id.* at 9). The exact direction of Holmes' argument is ill-defined, but the general thrust is that the Government violated 34 U.S.C. § 30506 and the Constitution. (Dkt. 36 at 9). To be sure § 30506(4) states that "[n]othing in this division shall be construed to allow prosecution based solely upon an individual's expression of racial, religious, political, or other beliefs[.]" 34 U.S.C. § 30506(4). This language, however, must be read with its purpose: to establish interpretive safeguards for the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act and its amendments. *See* 18 U.S.C. § 249. Holmes offers no authority that the Government's prosecution of someone under 18 U.S.C. § 875(c) for threatening to shoot up a synagogue runs afoul of 18 U.S.C. § 249 or 34 U.S.C. § 30506. (Dkt. 36 at 9). Indeed, § 30506 expressly confines its applicability to "this division" of the code which referred to Division E of the National Defense Authorization Act for Fiscal Year 2010, which is where the Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act of 2009, 18 U.S.C. § 249, was enacted. *See* Pub. L. No. 111-84, div. E, §§ 4707, 4710, 123 Stat. 2835, 2838, 2841 (2009). Simply put, 18 U.S.C. § 875(c) is not part of the equation.[4] At any rate, the face of the Indictment lends no support for

[4] Holmes makes passing reference to three cases, two out of circuit, and none with pin cites or explanation, for generic propositions that any law restricting speech must be "narrowly tailored" and that the Government cannot suppress speech merely because it is offensive or politically controversial. (Dkt. 36 at 9). None of these cases are relevant. Not one even mentions 18 U.S.C. § 875, 18 U.S.C. § 249, or 34 U.S.C. § 30506—much less supports Holmes' position. (Dkt. 36 at 9).

Holmes' position: the Government charged Holmes under § 875(c) for making a threat in interstate commerce; no reasonable inference can be drawn that the Indictment seeks to suppress political speech. (*See* Dkt. 10). Holmes is again free to present his legal theories to the jury, including his position that posts concerning killing jews is protected political speech. *Supra* at 2-9.

Holmes' final argument is that the Indictment violates the Due Process Clause because "[a]pplying § 875(c) to prosecute the posting of publicly available information and ambiguous statements about travel—where the defendant's actual conduct was entirely lawful and disclosed to law enforcement—creates intolerable ambiguity." (Dkt. 36 at 10). This position fundamentally misunderstands the Indictment and again disregards what the grand jury has charged Holmes with. (*Id.*) Holmes is not charged with violating § 875(c) for posting things about travel or going to Florida. (Dkt. 10). The grand jury charged him with violating § 875(c) because he replied to a post from the State of Isreal by stating: "I'm going to shoot up a synagogue." (*Id.*) The Court already explained that Holmes is free to challenge any evidence concerning traveling to Florida should the Government seek to rely on it. *Supra* at 2-9.

At last, Holmes raises a host of new arguments in his reply brief. (Dkt. 44). The Court declines to consider these because "arguments raised for the first time in a reply brief are waived." *Khanna v. Banks*, 2026 WL 2836748, at *9 n.7 (N.D. Ill. Sept. 22, 2026) (quoting *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020)); *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 515 (7th Cir. 2024).[5] Holmes also moves the Court to order the Government to provide a bill of particulars. (Dkt. 44 at 11-13). It is improper to raise a motion for a bill of

---

[5] *See also Gonzalez v. Vill. of Summit*, 2026 WL 2517227, at *4 n.1 (N.D. Ill. Aug. 26, 2026) ("waiting until the reply brief to raise" an argument results in waiver) (quoting *United States v. Garibay*, 621 F. App'x 843, 847 (7th Cir. 2015)); *Palacios v. City of Joliet*, 2026 WL 1855869, at *4 (N.D. Ill. June 29, 2026) (raising arguments for the first time on reply results in waiver); *Allen v. Casper*, 2026 WL 674309, at *5 (N.D. Ill. Mar. 10, 2026) (explaining that "a litigant may waive an issue or argument in many ways") (quotes omitted) (cleaned up); *Bakov v. Consol. World Travel, Inc.*, 2026 WL 810913, at *14 (N.D. Ill. Mar. 24, 2026) (failing to raise an argument results in waiver).

particulars in a reply brief. Fed. R. Crim. P. 7(f); *supra* at 11 n.5. The Court denies Holmes' request. *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981). To the extent Holmes seeks to move for a bill of particulars, he must follow the proper procedure. *See* Fed. R. Crim. P. 7(f).

**CONCLUSION**

The Court denies Holmes' Motion to Dismiss. (Dkt. 36). The Court further denies Holmes' request for a bill of particulars. (Dkt. 44).

Virginia M. Kendall
United States District Judge

Date: October 23, 2026